**In re Ronald J. WYLES, Regina L. Wyles, Debtors.**

**Bankruptcy No. 90–23018–B.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Jan. 28, 1991.

David H. Adams, Virginia Beach, Va., for debtor.

James R. Sheeran, Norfolk, Va., for plaintiff.

## OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

This case comes upon the trustee's objection to the debtor's claim of exemptions in two Employee Retirement Income Security Act (hereinafter "ERISA") 29 U.S.C. § 1001 *et seq.* qualified pension plans. Thanks to the commendable efforts of counsel, all relevant facts have been determined by stipulation.

### STIPULATED FACTS

On June 22, 1990 Dr. Ronald J. Wyles (hereinafter "Dr. Wyles") and his wife Regina L. Wyles filed a joint Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the Eastern District of Virginia, Norfolk Division. The Wyles' listed among their exempt assets interests in a pension and a profit sharing plan.

Dr. Wyles first became involved with ERISA qualified pension plans in 1973 as an employee of Virginia Beach Dermatology, Inc. In 1974 he ceased that employ-

ment and formed Dermatology, Inc. of Virginia Beach ("the corporation"), a corporation which he alone controlled for the next thirteen years. Dr. Wyles is, and has been since its formation, an employee of the corporation. In 1974 the corporation adopted ERISA qualified plans at its organizational meeting. Dr. Wyles was the trustee of those plans.

In 1979 Dr. Wyles, acting as the corporation's sole director, amended the plan to allow loans to participants of up to 100% of the participants share in the plan. Dr. Wyles took advantage of this change, borrowing $100,000 and repaying it the following year.

In 1983 Dr. Wyles, again acting as the corporation's sole director, amended the plans, this time to keep the plans current with changes in the applicable laws.

Late in the year 1987, Dr. Wyles sold half of his stock in the corporation to George C. Harr, M.D. Dr. Harr also became a director and officer of the corporation and has attended all of the corporate meetings since 1987. The corporation's by-laws provide that a single director is a quorum of the board of directors. Acting together as the board of directors of the corporation on December 1, 1987, Dr. Wyles and Dr. Harr approved the two plans at issue in this litigation.

The first is the Dermatology, Inc. of Virginia Beach Money Purchase Pension Plan & Trust (the "Pension Plan"), executed on December 1, 1987. The second is the Dermatology, Inc. of Virginia Beach Profit Sharing Plan and Trust (the "Profit Sharing Plan"), also executed on December 1, 1987. Both plans qualify as exempt plans under ERISA and the applicable sections of the Internal Revenue Code.

The trustee of both of these plans is Michael Torpey, an individual unrelated to Dr. Wyles or Dr. Harr. The plans both contain the anti-alienation and anti-assignment provisions required to maintain their tax exempt status. However, both plans also allow the trustee to make discretionary distributions to the beneficiaries under certain circumstances.

Eleven employees of the corporation participate in the plan. The employee with the largest share is Dr. Wyles. He is the beneficiary of roughly 72% of the assets. On June 22, 1990, the date of Dr. Wyles' filing, his interest in the Pension Plan was approximately $458,014.20 and his interest in the Profit Sharing Plan was approximately $487,019.17. Thus the amount in dispute is approximately $945,033.37

## LEGAL ANALYSIS

The body of law construing ERISA is a complex and growing one as is the body of Bankruptcy law construing various pension statutes. Many of the issues under dispute in this case, however, have been recently settled by the Fourth Circuit. The case of *In re Moore*, 907 F.2d 1476 (4th Cir.1990) controls much of the outcome of this case. An area of great contention in Bankruptcy/ERISA litigation has been the interpretation of 11 U.S.C. § 541(c)(2). This section provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Many authorities, including those cited by the trustee, have examined the legislative history of this statute and found the phrase "applicable nonbankruptcy law" to mean state spendthrift law.

The court in *Moore* held that, for several reasons, the phrase "applicable nonbankruptcy law" includes Federal statutes such as ERISA. First, other uses of the same phrase found within the Bankruptcy Code refer to both Federal and state law. *In re Moore*, 907 F.2d at 1477–78. Second, the court found the wording of the statute clear. Thus no resort to legislative history was necessary. *Id.* at 1478–79. Finally, the court considered the legislative history to be ambiguous at best. *Id.* at 1479. The court did note a possible exception in the matter of self-settled trusts, of which this Court shall have more to say in a moment. The controlling principal to be derived from the initial pages of *Moore*, however, is that ERISA *may* constitute "applicable nonbankruptcy law" which exempts certain beneficial interests from the reach of creditors in a bankruptcy proceeding.

The court in *Moore* next considered "whether ERISA contains an enforceable transfer restriction that would bring the statute within the meaning of the term 'applicable nonbankruptcy law' in § 541(c)(2)." *Id.* The court noted that a plan must contain restrictions on alienation, transfer, and accessibility to general creditors in order to qualify under ERISA and the applicable Internal Revenue provisions. *Id.* at 1480. The court stated "[b]ecause ERISA clearly prevents general creditors from reaching a debtor's interest in this ERISA-qualified trust, it constitutes "applicable nonbankruptcy law" under which restriction on the transfer of pension interests may be enforced." *Id.*

In reaching this decision the court noted three policy considerations underlying its decision, all of which bear on this case. First, a contrary holding would allow creditors to push a debtor into involuntary bankruptcy in order to reach the assets in his or her pension plan. The court found no evidence that Congress intended such a result. *Id.* Second, to hold that the exemption of pension plan assets depended on state exemption laws would destroy much of the nationwide uniformity of treatment for pension plans which ERISA was created to ensure. The court stated "[o]ur holding ensures that the security of employee retirement benefits will not depend on the particularities of state spendthrift trust law." *Id.* Third, the court's holding also "avoids the specter of a bankruptcy trustee disqualifying an entire plan from tax exempt status by seeking turnover of a single bankrupt's interest in the plan." *Id.*

The trustee has cited a number of cases for the proposition that "applicable nonbankruptcy law" should be read to mean only state spendthrift trust law. The court in *Moore* stated, "[t]hese decisions have, in the main, involved self-settled trusts in which the settlor is the beneficiary with the power to amend or to terminate the trust without penalty.... we respectfully decline to follow this course." *Id.* at 1478. The Court did indicate, at least indirectly, that its opinion covered only a case in which the debtor had no control over the trust and no ability to reach the trust property. In distinguishing cases which have reached the opposite result, the court listed a number of factors which were not present in *Moore*, but which *might* alter the equation in another case. In *Moore* "the beneficiaries do not control the plan, cannot make unrestricted withdrawals from it, cannot borrow against it, and cannot amend it." *Id.*

This Court must examine these factors, keeping in mind the policy goals enunciated in *Moore;* namely, insuring uniformity of law, not allowing pension assets to be reached through an involuntary proceeding, and not allowing an entire plan to be disqualified through the attachment of the interest of a single beneficiary. In this case the settlor is the corporation and the beneficiaries are the employees of the corporation. At least nominally they cannot amend or terminate the plan. Nor, at this time, are they permitted to make unrestricted withdrawals from the plan or borrow against their interests in it.

Looking more closely at the situation, nevertheless, it becomes clear that this is not such a simple case. Dr. Wyles is not a lower level functionary at a large corporation having no control over the plan. He is a 50% shareholder of the corporation and one of two directors. Since the corporation's bylaws provide that a single director is a quorum, Dr. Wyles could convene a meeting and amend or terminate the plan as he saw fit. In such a closely held corporation, there is also a high likelihood that he might persuade Dr. Harr to consent to a loan or cash distribution. On the other hand, there is absolutely no showing that this trust was established or maintained by Dr. Wyles to defraud his creditors. For example, the evidence does not reveal any last minute, prebankruptcy planning. The trust was simply a vehicle to provide for the retirement of the corporation's employees, including Dr. Wyles.

Moreover, were the courts to hold that such a closely held corporation cannot place pension assets beyond the reach of creditors in bankruptcy, it could have enormous impact. Many plans would be cancelled. Many creditors would attempt to force the

owners of closely held and professional corporations into involuntary bankruptcy in order to reach the pension assets. Many of these plans could lose their tax exempt status. All of this runs contrary to the policy choices which underlay the decision in *Moore*.

Accordingly, the trustee and any successor trustees are ENJOINED from making any distribution to Dr. Wyles, his assignees, or designees until such time as Dr. Wyles reaches the age of 59 and ½ years of age without order of this Court.

The Directors of Dermatology Inc., of Virginia Beach are ENJOINED from making any changes, amendments, alterations to the plans or authorizing any distributions from the plans to Dr. Wyles until he reaches the age of 59 and ½ years without order of this Court.

Should any distribution be made to Dr. Wyles, his assignees, or designees before he reaches the age of 59 and ½ years without the prior approval of the Court, the bankruptcy estate will be reopened and those funds will be made available for the creditors of the estate.

The Court will look with favor upon a request for an alteration in the terms of the plans made solely to keep them in compliance with changes in Internal Revenue Code or the laws governing ERISA plans. Of course, any party in interest may seek a change in this Order should such be warranted by a change in Dr. Wyles' situation, including death, serious injury, incapacity, or the like.

IT IS SO ORDERED.